IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VINCENT CANNADY,   *

    Plaintiff,   *

v.   *

                              CIVIL NO. JKB-21-0869

LAWRENCE JOSEPH HOGAN, JR., *
GOVERNOR OF MARYLAND, *et al.*,

    Defendants.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff Vincent Cannady has sued various Maryland officials, including Governor Lawrence Joseph Hogan, Jr.; Scott G. Patterson, State's Attorney for Talbot County; Stephen Hughes Kehoe, Administrative Judge for Talbot County Circuit Court (collectively, "Government Defendants"); and Public Defender Kisha Petticolas. Although Plaintiff has alleged numerous constitutional and statutory violations and sought millions of dollars in damages, he explains that his main goal in filing this lawsuit is "getting ADR with the State of Maryland" in an unspecified state court litigation. (*See* ECF No. 3 at 2; *see also* Compl. at 5, ECF No. 1 (seeking "Injnctive Relief of Court Ordered ADR in Liue of Payment for the Violations, [or] if no ADR then the Plaintiff seeks 9 million 9 hundred and 99 thoughsand for the violations of Plaintiffs Civil Rights").)[1] Currently pending before the Court is the Government Defendants' Motion to Dismiss the Complaint (ECF No. 8). The motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, an Order

---

[1] Quotations from Plaintiff's filings are reproduced verbatim.

1

shall issue granting the Government Defendants' Motion to Dismiss and directing Plaintiff to show proof of service on Petticolas.

## I. *Factual Background*[2]

Plaintiff is a disabled veteran and resident of Missouri who describes himself as a "person of color with Caucasian Ancestry but [who] the State Court of Maryland list[s] [ ] as Black while he identifies with his Irish Ancestry." (Compl. at 1, 9.) The nexus of Plaintiff's allegations appears to be an unspecified, ongoing criminal prosecution brought against him by the State of Maryland (the "State Case"). (*Id.* at 4.) He alleges that this case was dismissed based on "an ADA Nolle [Prosequi] Plaintiff submitted in 2019 April 22nd," but was then subsequently "reinstated on 090909." (*Id.*) Plaintiff has filed this lawsuit against various persons who are involved in the State Case, and who he alleges "are working in collusion . . . to convict Plaintiff of a crime that he did not commit." (*Id.* at 15.) He has also brought claims against Governor Hogan, which appear to derive from Governor Hogan's supervisory role as the chief executive of Maryland. (*See id.* at 8–10 (alleging, *inter alia*, that "Lawrence J. Hogan Jr. is the Chief executive Officer of the State of Maryland and as such is responsible for the actions of the agencies he controls").) Plaintiff alleges that the Government Defendants' actions have violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et. seq.*; the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, *et. seq.*; various constitutional amendments; and Title 38 of the U.S. Code. (*Id.* at 8.) Plaintiff principally seeks alternative dispute resolution ("ADR") or mediation with respect to the State Case, though he also alleges significant damages flowing from the Government Defendants' conduct. (*Id.* at 4; *see also* ECF No. 3 at 2.)

---

[2] The facts in this section are taken from the Amended Complaint and construed in the light most favorable to Plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

2

## II. Legal Standard

When "considering a motion to dismiss" pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). In addition, the Court must "construe pro se pleadings liberally . . . particularly if the pro se plaintiff raises civil rights issues." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citations omitted).

Even though a *pro se* complaint is construed liberally, it must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. Analysis[3]

Even with a liberal construction, the Court finds it challenging to effectively crystallize Plaintiff's allegations into cogent claims. This is further complicated by the fact that Plaintiff has not opposed the Government Defendants' Motion to Dismiss, despite twice being provided additional time to do so. (*See* ECF Nos. 12, 16.) However, for purposes of the pending Motion to

---

[3] The gravamen of Plaintiff's Complaint appears to be that he is being maliciously prosecuted in the State Case, allegedly because of his race. (*See* Compl. at 15.) Such a pleading would fail on its face because "a prima facie case of malicious prosecution *must include* . . . [a] termination of [the prosecution in a way that is] favorable to the plaintiff." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (emphasis added). Here, it appears that the State Case is ongoing, so a malicious prosecution claim is premature. However, because Plaintiff makes additional allegations, the Court proceeds beyond this core claim to explain why Plaintiff has also failed to plead any other claims.

3

Dismiss, the Court discerns four analytically distinct claims from Plaintiff's Complaint: (1) a generalized request for an injunction requiring the Government Defendants to engage in alternative dispute resolution in the State Case; (2) a claim for money damages for violations of the ADA; (3) section 1983 claims seeking money damages against the Government Defendants in their official capacity; and (4) section 1983 claims seeking money damages against the Government Defendants in their personal capacities.[4] Each of these allegations "fail[s] to state a claim upon which relief can be granted" by this Court because the Government Defendants are either immune from suit for the alleged conduct or the requested relief exceeds this Court's authority. *See* Fed. R. Civ. P. 12(b)(6).

## *A. Injunctive Relief*

The Complaint seeks an injunction requiring the State of Maryland to engage in ADR or mediation in the State Case. (Compl. at 5.) Plaintiff does not tie this requested injunctive relief to any particular violation of his statutory or constitutional rights. However, the Court need not attempt to make the connection between Plaintiff's alleged harm and requested relief because the injunctive relief Plaintiff seeks exceeds the limits placed on this Court's remedial authority by the Anti-Injunction Act. *See* 28 U.S.C. § 2283.

The Anti-Injunction Act prevents "[a] court of the United States" from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* This prohibition extends to relief that has the "same effect as" a stay on proceedings or that has "virtually the same practical impact as a formal injunction would." *Tucker v. Specialized Loan*

---

[4] Plaintiff also includes a passing reference to violations of Title 38 of the U.S. Code, which governs Veteran's Benefits. (*See* Compl. at 8–9.) Even under the most generous construction of the pleadings, the Court is unable to identify the basis of, or any factual support for, these claims.

4

*Servicing, LLC*, 83 F. Supp. 3d 635, 641 (D. Md. 2015) (discussing the Anti-Injunction Act's application to a declaratory judgment claim). The Court sees no way in which it could grant Plaintiff's requested injunctive relief and require the State of Maryland to engage in ADR in the State Case without formally, or at least practically, staying the state court proceedings. Accordingly, Plaintiff's request for injunctive relief is barred by the Anti-Injunction Act.[5]

## B. *Money Damages*

Because the Court is unable to grant Plaintiff the injunctive relief that he seeks, it now turns to his claims for money damages. (*See* Compl. at 5 ("[I]f no ADR then the Plaintiff seeks [$9,999,000] for the violations of the Plaintiffs Civil Rights.").) The Court concludes that all of Plaintiff's claims for money damages are barred by either sovereign immunity or various forms of personal immunity.

### 1. *ADA Claims*

Plaintiff's Complaint states that all of the Government Defendants' conduct alleged in the supplemental statement violates the ADA. (*See id.* at 8–15.) However, the only conduct that appears to stem from Plaintiff's disability in any way is his allegation that Judge Kehoe ordered Plaintiff to appear in person in the State Case, despite Plaintiff's preexisting conditions that render him susceptible to COVID-19. (*Id.* at 11.) The Court does not definitively resolve whether this order would constitute an ADA violation, because the claim, as plead, is barred by judicial immunity.

---

[5] Further, granting an injunction requiring ADR in the State Case would also likely violate the comity principles articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971). These principles "plainly declare[] that federal court equitable interference with state criminal proceedings should not be undertaken except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996). The Court finds that no part of Plaintiff's pleadings suggests that such extraordinary circumstances are present, except for allegations that are too speculative and conclusory to justify setting aside the "premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Id.* at 904 (internal quotations marks and citation omitted). Thus, the Court believes federal intervention in the State Case would be premature and unfounded for this additional reason.

5

"The doctrine of judicial immunity extends, of course, to judges" and is "designed to protect the judicial process." *Williams v. Hanlon*, Civ. No. RDB-19-0550, 2019 WL 1597320, at *3 (D. Md. Apr. 15, 2019). Judicial immunity "protects a judge from damages suits entirely . . . even if the judge commits grave procedural errors." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). There are two exceptions to judicial immunity: (1) "a judge is not immune from liability for nonjudicial actions," and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11–12.

Here, Plaintiff alleges that Judge Kehoe violated the ADA by entering an order in the State Case requiring that Plaintiff appear in person to discharge his court-appointed public defender. Such an action falls squarely within both Judge Kehoe's judicial role and the jurisdiction of the Circuit Court of Talbot County. *See* MD. CODE ANN., CTS. & JUD. PROC. § 1-501 (providing that a circuit court possesses "full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal"). Accordingly, Judge Kehoe is entitled to judicial immunity with respect to Plaintiff's ADA claim.

### 2. *Official Capacity § 1983 Claims*

The Court now turns to Plaintiff's constitutional claims, which allege repeated violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution. Construed broadly, the pleadings appear to allege both official-capacity and personal-capacity § 1983 claims against the Government Defendants. (*See, e.g.*, Compl. at 12 (alleging claims against "Stephen J. Leyhoe in his Official and UN-Official Capacity").) The Government Defendants assert that Plaintiff's official-capacity claims are barred by sovereign immunity. The Court agrees.

Sovereign immunity "deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Criscione v. U.S. Nuclear Regul. Comm'n*, 493 F. Supp. 3d 423, 430 (D. Md. 2020); *see also United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012) ("Subject matter jurisdiction defines a court's power to adjudicate cases or controversies—its adjudicative authority—and without it, a court can only decide that it does not have jurisdiction."). A state's sovereign immunity derives from the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign States." U.S. Const. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court." *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). This immunity extends to actions "against state officials that are in fact actions against the state as the real party in interest." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 746 (4th Cir. 2018). The state is the real party in interest when state officers are sued under § 1983 in their official capacity, and therefore "the immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."[6] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

These principles bar Plaintiff's official-capacity claims, which effectively seek money damages against the State of Maryland. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself."). These claims will therefore be dismissed for lack of subject matter jurisdiction.

---

[6] All three Government Defendants are state officials. *See* MD. CODE. ANN., STATE GOV'T § 12-101(a).

### 3. *Personal Capacity § 1983 Claims*

Construing Plaintiff's claims as being brought against the Government Defendants in their personal capacities fares no better. "While the defense of sovereign immunity is unavailable to those sued in personal-capacity suits, defenses of absolute or qualified immunity may still be available." *DeLong v. I.R.S.*, 908 F.2d 966, at *1 (4th Cir. July 10, 1990) (table). Here, all three Government Defendants may avail themselves of either absolute or qualified immunity to defeat Plaintiff's personal-capacity claims.

#### a. *Judicial Immunity*

For similar reasons to those stated above, Plaintiff's constitutional claims against Judge Kehoe are barred by judicial immunity. *See supra* Part III.B.1. Like Plaintiff's ADA claims, Plaintiff's constitutional claims against Judge Kehoe are complaints as to Judge Kehoe's handling of the State Case that are foreclosed by judicial immunity. (*See* Compl. at 11–12 (alleging constitutional violations based on Judge Kehoe's refusal to transfer case; appointment of a public defender for Plaintiff; and denial of Plaintiff's motion to dismiss the State Case).) Although Plaintiff speculates that Judge Kehoe's orders were entered as part of a conspiracy among the Government Defendants to "convict Plaintiff of a crime that he did not commit" (Compl. at 15)—an allegation that would likely not be covered by judicial immunity—Plaintiff offers no allegations that are probative of that conspiracy, and accordingly fails to state a claim that is not subject to judicial immunity. *See Twombly*, 550 U.S. at 556–57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

### *b. Prosecutorial Immunity*

State's Attorney Patterson is similarly protected by prosecutorial immunity, which is "based on the same considerations as the doctrine of judicial immunity" and provides that "prosecuting attorneys enjoy absolute immunity when performing prosecutorial functions, as opposed to investigative or administrative ones." *Westfall v. Tichnell*, Civ. No. GJH-20-0271, 2021 WL 2434432, at *3 (D. Md. June 15, 2021). Here, Plaintiff claims that State's Attorney Patterson has violated his constitutional rights by "refusing ADR and to acknowledge that the [State Case] was dismissed under a Nolle Prosecui." (Compl. at 13.) A prosecutor's "decision to file charges" is entitled to absolute prosecutorial immunity, so these claims fail. *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997).

Absolute immunity also extends to a prosecutor's negotiations of a plea agreement, because these functions are "intimately associated with the judicial phase of the criminal process." *Hamilton v. Min. Cnty., W. Va.*, Civ. No. OJA-16-10562, 2017 WL 9517521, at *4 (S.D.W. Va. Mar. 29, 2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (collecting cases). This Court finds no meaningful distinction between those cases and the present one, in which Plaintiff claims that State's Attorney Patterson has refused to engage in negotiations aimed at identifying alternative means for resolving the State Case.[7] Patterson's "activities [were] intimately associated with the judicial phase of the criminal process, and thus [were] functions to which the reasons for absolute immunity apply with full force." *Imbler*, 424 U.S. at 430. State's Attorney Patterson is,

---

[7] Plaintiff asserts that State's Attorney Patterson's refusal to participate in such negotiations stems from racial animus. (*See* Compl. at 13.) Plaintiff has completely failed to substantiate this serious allegation, so the Court will not consider whether, if pleaded properly, such an allegation would be sufficient to vitiate absolute prosecutorial immunity. *See Vanover v. Hirsch*, Civ. No. TER-14-0277, 2014 WL 12526345, at *3 (D.S.C. Apr. 2, 2014) ("Moreover, even if [ ] the lack of any indication of race or class-based discrimination did not completely bar Plaintiff's Complaint, to the extent that it seeks damages for alleged "unjust incarceration" from Richland County Assistant Solicitor Hirsch, it is barred by the well-established legal doctrine of prosecutorial immunity.").

9

therefore, entitled to prosecutorial immunity with respect to Plaintiff's personal-capacity § 1983 claims.

### c. Qualified Immunity[8]

Last, Plaintiff's claims against Governor Hogan fail under the doctrine of qualified immunity, which "shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks and citation omitted). Qualified immunity protects government officials unless they are "plainly incompetent or knowingly violate the law." *Id.* (internal quotation marks and citation omitted).

Plaintiff's ostensible constitutional claims against Governor Hogan are (1) that he failed to remedy the "woeful state of he State of Maryland's roads . . . prior to the Plaintiff's auto accident;" (2) that he "targeted [P]laintiff for criminal prosecution even though he has no criminal record of convictions;" and (3) that he "did not protect veterans from illegal prosecutions by instituting a law that allows Veterans to seek veterans Court BEFORE a conviction." (Compl. at 9–10.) While the Court is extremely skeptical that these unsubstantiated allegations articulate constitutional claims at all, the Court is certain that they do not articulate violations of *"clearly established constitutional rights." Occupy Columbia*, 738 F.3d at 118 (emphasis added).

As an initial matter, "[t]o determine whether a right was clearly established, the court first must define the right at issue," because "[a] right is clearly established only if its contours are

---

[8] Governor Hogan also suggests that he is entitled to public official immunity. (*See* Mot. Dismiss Mem. Supp. at 10–11, ECF No. 8-1.) However, public official immunity in Maryland is "generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct" and "is defeated if the actor . . . commits a state constitutional tort." *Johnson v. Balt. City Police Dep't*, 452 F. Supp. 3d 283, 297–98 (D. Md. 2020). Here, the Court does not believe that public official immunity applies to Plaintiff's Complaint, but because it concludes that Governor Hogan is entitled to qualified immunity, it need not definitively resolve this issue.

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saltz v. City of Frederick, Md.*, Civ. No. ELH-20-0831, 2021 WL 1856636, at *25 (D. Md. May 10, 2021); see also *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted) ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law.'"). Here, Plaintiff's allegations fail to show that Governor Hogan violated "clearly established" law, particularly because "courts are not to define clearly established law at a high level of generality." *Wilson v. Prince George's Cnty., Md.*, 893 F.3d 213, 221 (4th Cir. 2018) (internal quotation marks and citation omitted). Even providing the Complaint with its most generous construction, the Court is unable to disentangle if and how Plaintiff's allegations against Governor Hogan constitute violations of the "4th, 5th, 6th and 14th Amendments." (Compl. at 11–12.) However, given the Supreme Court's insistence that "lower courts should think hard and then think hard again, before addressing both qualified immunity and the merits of an underlying constitutional claim," this Court need not continue with a more granular parsing to confirm its suspicion that these claims are substantively meritless. *Wesby*, 138 S. Ct. at 589 n.7. Suffice it to say that any constitutional claims against Governor Hogan that could be derived from these pleadings would not be based on violations of Plaintiff's "clearly established" constitutional rights. *Id.* at 589.

### C. *Claims Against Petticolas*

The dismissal of Plaintiff's above claims leaves intact only his claims against Petticolas, who has not moved to dismiss, and has apparently not entered an appearance in this case. Further, the record is unclear as to whether and when service was effectuated on Petticolas. For instance, in Plaintiff's Motion to Amend the Complaint, Plaintiff notes that he "has not served the Defendants yet due to his hopes of getting ADR with the State of Maryland." (*See* ECF No. 3 at

2.) This record, combined with the fact that Petticolas is the only defendant who has failed to appear in this case, raises concerns that Petticolas may have been served improperly or not served at all. Accordingly, before the Court will permit Plaintiff to move forward with his claims against Petticolas, Plaintiff must confirm that Petticolas is aware of those claims. Plaintiff is therefore directed to show proof that the Complaint was served on Petticolas within thirty (30) days.

### *IV.    Conclusion*

For the foregoing reasons, an Order will issue granting the Government Defendants' Motion to Dismiss the Complaint (ECF No. 8) and directing Plaintiff to show proof of service on Defendant Petticolas within thirty (30) days.

DATED this __8__ day of July, 2021.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
Chief Judge